UNTIED STATES DISTRICT COURT
FOR THE NORTH DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| State of Georgia, *ex rel*[1], | ) |
| Donna Marie Smith, | ) |
| Ernest Welch Smith, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| Vs. | ) Civil Action No.: 1:24-CV-0691 |
| | ) |
| WYNDHAM VACATION | ) |
| (RESORTS) OWNERSHIP, INC. | ) |
| WYNDHAM VACATION CLUB, | ) |
| WYNDHAM VACATION | ) |
| MANAGEMENT, INC. | ) |
| MARGARITAVILLE VACATION | ) |
| CLUB by WYNDHAM, INC. | ) Trial by Jury Demanded |
| WYNDHAM VACATION | ) |
| RESORTS PUERTO RICO, LLC | ) |
| TRAVEL + LEISURE, CLUBS | ) |
| & RENTAL, LLC | ) |
| Michael Manzella, | ) |
| Sujaily Santiago, | ) |
| | ) |
| Defendants | ) |

# COMPLAINT

## NATURE OF ACTION

1.      This is a complaint arising out of Wyndham and the other above-named Defendant

Corporations (hereafter, Wyndam) policy and practice of misleading and deceptive timeshare

sales presentations including salespeople employed by Wyndham who are preying on elderly

clientele (such as Plaintiffs), a complaint to require specific performance of a contract. a

---

[1] *ex rel.*: for the people of the United states defined: "..Legal proceedings which are instituted by the attorney general (or other proper person) in the name and behalf of the state, but on the information and instigation of an individual who has a private interest in the matter." Black's Law, Abridged Fifth Edition.

complaint for unconscionable contract(s), breach of contract, fraud in Truth in Lending, and a

request for declaratory and injunctive relief; and,

2.      Wyndham's timeshare sales policies and practices are consistently deceptive and

misleading. Plaintiffs personally experienced their deceptive sales practices and have

now been cut off/ blocked from using the more than 611,00 points (considered "Gold" level

membership) that have been paid in full by Plaintiffs (to the tune of approximately $174,334.00,

including down payments) because we are disputing two (2) alleged contracts that Plaintiffs were

induced/deceived into placing our handwriting on their papers for an additional $ 78,452.00 of

disputed debt to Defendant Wyndham Vacation Club (and all corporate entities named

hereinabove); and,

3.      Plaintiffs attempted to settle this dispute with Defendants, hoping to avoid taking legal

action in a court of law, to no avail. See the Offer/Notice mailed to Defendant Wyndham attached

hereto and incorporated herein, as if fully reproduced herein as Exhibit "A"; and,

## PARTIES TO THIS COMPLAINT

4.      Plaintiffs Donna Marie and Ernest Welch Smith are natural persons/citizens of the

Georgia Republic who reside in Georgia state and are domiciled at 4455 Sagebrush Drive,

Kennesaw, GA 30152; and,

5.      Defendants WYNDHAM VACATION (RESORTS) OWNERSHIP, INC., WYNDHAM

VACATION CLUB and WYNDHAM VACATION MANAGEMENT, INC. (all are artificial

persons[2]) are Delaware corporations doing business in the State of Georgia.  Their principal

office is: 6277 Sea Harbor Drive, Orlando, FL 32821[3]. Their Registered Agent is: Corporations

---

[2] Persons created and devised by human laws for the purpose of society and government, as distinguished from natural persons.  Corporations are examples of artificial persons.  Black's Law Dictionary, Abridged Sixth Edition.
[3] The holding company for Wyndham is a publicly traded company known as Wyndham

Service Company located at 2 Sun Court, Suite 400, Peachtree Corner, GA 30092 (Gwinnett County); and,

6.      Defendant WYNDHAM VACATION RESORTS, PUERTO RICO, LLC is a Foreign (Delaware) Corporation doing business in Puerto Rico and Georgia.  The Margaritaville resort that is the subject of this complaint is located at c/o RVM Professional Services, LLC, A4 Reparto Mendoza, Humacao, PR, 00791, whose administrators are Wyndham Vacation Ownership, Inc.  Their Registered agent is: c/o RVM Professional Services, LLC, A4 Reparto Mendoza, Humacao, PR, 0079; and,

7.      Defendant MARGARITAVILLE VACATION CLUB BY WYNDHAM, INC. is a foreign (Delaware) corporation (artificial person) located in Puerto Rico whose address is: c/o George H.T. Dudley, Law House, 1000 Frederiksberg, St. Thomas, Virgin Islands, 00802.  Their registered agent is: c/o RVM Professional Services, LLC, A4 Reparto Mendoza, Humacao, PR, 0079; and,

8.      Defendant TRAVEL + LEISURE CLUBS & RENTAL, LLC is a Delaware corporation (artificial person) doing business in Georgia whose principal office is in Orlando, Florida.  The registered agent is: 2 Sun Court, Suite 400, Peachtree Corner, GA 30092 (Gwinnett County); and,

9.      Defendant Michael Manzella is a Representative/Salesperson (natural person) for the Defendants Wyndham Vacation Ownership, Inc. (and/or: Wyndham Vacation Club/ Wyndham Vacation Management, Inc. and/or Travel + Leisure) is being sued in his personal capacity and may be served at 1110 Ocean Blvd., Pompano Beach, Florida 33062-6607; and,

---

Destinations Inc. Wyndham Destinations Inc. is also a Delaware corporation. On or about March 19, 2018, Wyndham Worldwide announced its filing of a Form 10 Registration Statement whereby it was separated into two public companies. One public company which owns and operates hotels was the Wyndham Hotel Group which became known as Wyndham Hotels and Resorts, Inc. The other public company which offers timeshares is Wyndham Destinations Inc.

10.      Defendant Sujaily Santiago is a Representative/Salesperson (natural person) for

Defendants Wyndham Vacation Resorts, Puerto Rico, LLC and/or Margaritaville Vacation Club

by Wyndham, Inc. and is being sued in her personal capacity and may be served at 6000 Rio Mar

Blvd., Rio Grande, PR 00745-6100; and,

**JURISDICTION AND VENUE**

11.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, Diversity of

Citizenship, as Plaintiffs are residents of Georgia state and Defendant Wyndham (all other

corporate Defendants) are subject to jurisdiction in this District by virtue of its extensive

business dealings and transactions within the State of Georgia with resorts in Atlanta, Villa Rica,

Buckhead, Marietta and Austell (to name a few operating within Georgia). Wyndham is

registered with the Georgia Secretary of State to do business in Georgia. Defendant Wyndham

maintains its corporate office in Florida and also has resorts in Puerto Rico and foreign countries.

The individual Defendants (Manzella and Santiago) are residents of Florida and Puerto Rico,

respectively.  The amount in controversy exceeds $175,000; and,

12.      This is the proper venue pursuant to 28 USC Section 1391(b)(3) and (c) (1), (2) and (3);

and,

**FACTUAL EVENTS LEADING TO THIS COMPLAINT**

13.      In March of 2020 while walking down the street while vacationing in Panama City Beach

Florida, Plaintiffs were approached by a sales representative of Defendant Wyndham offering a

$100.00 gift card if we would go to a 90-minute presentation by Wyndham at a nearby Wyndham

resort in Bay County; and,

14.      Plaintiffs, tempted by the offer, agreed to go. After **5 + hours** (not 90 minutes) at said

presentation (Club Wyndham at Panama City Beach), Plaintiffs were convinced to purchase what

4

was titled: CLUBWYNDHAM ACCESS VACATION OWNERSHIP PLAN for a total purchase price of $21,300 minus a $4,800 "discount", with a net price of $16,849.00, which Plaintiffs paid in full. Plaintiffs did not realize until much later that we were actually owners at that resort with monthly HOA fees and Real Estate Taxes of $42.96/month that was included in the monthly membership fee of about $350.00/month. At that same presentation Wyndham applied for a credit card for Plaintiffs without our knowledge (until later) and the monthly maintenance fees were directly billed to that credit card; and,

15.     At our next vacation (through Wyndham) on or about October 10, 2020, at check-in we were enticed by offers of more gift cards to go to an "owner update". At that "update" we were convinced to trade the ownership at Panama City for "points" (which we later learned, was actually a down-grade from actual ownership of a resort because the maintenance fees/ membership fees stay more consistently level (lower) than just a points ownership). This cost us a total of approximately $28,249.00 in additional moneys; and,

16.     As retired individuals on a fixed income, we resorted to borrowing said money on our savings account (Savings Secure Loan through the Credit Union of Georgia) to pay (in full) for this, as we could not afford to pay the high cost of the interest rate of a loan through Wyndham. Plaintiffs later maxed out that savings secured loan (a total of $40,000.00 borrowed) to pay for Wyndham points/resorts. Plaintiffs still owe over $29,000 of that loan; and,

17.     At our next vacation through Wyndham on or about March 8, 2021 the same events occurred. Plaintiffs were, again, enticed/bribed into another "owner update" at check-in and, once again, told that we needed to purchase more points to experience a better vacation (and told that we made mistakes of the last purchase), to the amount of $23, 649, which was paid in full with a special offer of a zero interest for 12 months for a different Wyndham credit card; and,

18.     This occurred six (6) <u>more</u> times (on 11/22/21; 11/31/22; 5/31/22; 12/17/22; 12/20/22;

and 1/5/23).  At every vacation we booked through Wyndham - those next six (6) times - we

were told at the "owner updates" that we made some sort of mistake and needed to purchase

more points, etc., in order to correct those previous purchase mistakes.  Plaintiffs ended up

paying (in full) a total of approximately **$174, 334** and now have outstanding loan debt, because

of this, of roughly $60,000.  Plaintiffs resorted to a Reverse Mortgage in order to make ends

meet and, now, the equity we have in our home is nearly spent.  We are broke and may very soon

find it necessary to file for bankruptcy; and,

19.      At the last two vacations, (1) on or about December 20, 2022 (at Wyndham's

Margaritaville in Puerto Rico, for Mrs. Smith's, birthday and, (2) January 5, 2023 (for Plaintiffs'

49th wedding anniversary at Pompano Beach, FL), the same events occurred.  In fact, at the

Wyndham Margaritaville, Puerto Rico Defendant, S. Santiago, told us that if we did not purchase

into the Wyndham Margaritaville Resort, that we would not be able to book any vacations at <u>any</u>

of the Margaritaville's that Wyndham owned. It did not dawn on Plaintiffs until later, that we had

booked at that very Margaritaville resort through Wyndham <u>without</u> being owners of a

Margaritaville resort.  Plaintiffs were blatantly lied to and had been being lied to all along; and,

20.      At the Wyndham Pompano Beach Resort in Florida Defendant Manzella, in his push to

get us to trade our points for the Wyndham Midtown 45 at New Your City – another **5-6 hour**

"Owner update" - in which he knew that Plaintiffs had no interest to ever taking a vacation to

New York City. Defendant Manzella bragged about how much money his "buddy" was making

selling his weeks to others on the internet and said that we could also do that, particularly, if we

owned the over one million points he was desperately trying to sell us.  Unfortunately, the

thought of selling points that could (as Mr. Manzella had repeatedly falsely pointed out) "pay

for" our monthly maintenance fee was so convincing, that we fell for the lies and placed our

hand-writing on his documents.  It was handwritings, not our signatures, as Plaintiffs were given

false promises, told lies about alleged selling points and were not fully informed of the

ramifications of such an act.  This is fraudulent inducement that occurred from the outset of first

encounter with Defendant Wyndham until the last; and,

21.      After Plaintiff's returned home from the January 5th 2023 trip Plaintiffs began to

seriously struggle to make ends meet and realized that we had been lied to and deceived (had

made huge mistakes in trusting Defendants' promises) Plaintiffs cannot afford the over $1,200.00

in monthly payments to Wyndham Finance on top of the over $525.00/ month in maintenance

fees that were being charged on Wyndham credit cards and, thus, sent a 'NOTICE OF OFFER

OF PERFORMANCE TO PAY ALLEGED OBLIGATION IN FULL OR AGREED

INSTALMENTS' under O.C.G.A. 11-2-206, etc. to Defendant Wyndham at their corporate office

in Orlando, Florida. See Exhibit "A" as noted herein above). Wyndham was granted thirty (30)

days to respond to said Offer/Notice.  The USPS shows that said Offer was received by them on

or about June 5, 2023.  Wyndham remained silent. It is well decided in law, that silence means

acceptance; and,

22.      Per said Notice/Offer, on or about June 17, 2023 Plaintiffs mailed a second letter to

Wyndham, which is attached hereto and incorporated herein, as if fully reproduced herein as

Exhibit "B", because Wyndham had then decided (after being silent the entire time) to lock

Plaintiffs out of our Club Wyndham account and prevented us from booking any more vacations,

in which we had over 611,00 points ready to use (that were paid IN FULL prior to the last

alleged contracts); and,

23.     In said letter (Exhibit "B") Plaintiffs demanded that we be put back in the same position

we were in prior to December 17, 2022, and that we be refunded the over $17,000 in down

payments. During that time period, prior to June 2023, we were still paying the monthly

maintenance fee (approx. $525.00) but stopped the two automatic drafts (of over $1,200/month)

being charged on Plaintiff Ernest Smith's Wyndham credit cards; and,

24.     Also included with said letter (Exhibit "B") Plaintiffs attached our 'AFFIDAVITS OF

REVOCATION OF SIGNATURE FOR CAUSE'.  See said exhibits, attached hereto and

incorporated herein, as if fully reproduced herein, Exhibits "C1" and "C2". Defendants (all)

continued to remain silent; and,

25.     On or about August 12, 2023 Plaintiffs made a third (3rd) good faith attempt to rectify this

situation by writing to Defendants' Registered Agent: Corporation Servicing Company at 1201

Hays St., Tallahassee, Florida, a 'NOTICE OF INTENT TO SUE'.  Said Notice is attached

hereto and incorporated herein as if fully reproduced herein as Exhibit "D"; and

26.     At that point Plaintiffs were not asking for all money's back that we paid for Defendants'

vacation club membership, we merely wanted to be put back in the same position we were before

the last two alleged contracts that we were deceived into; and,

27.     This finally got someone's attention. On or about August 25, 2023 Plaintiff Donna Marie

Smith received an e-mail from a person named Savannah Lacy.  She purportedly had been

assigned to "investigate" the matter for Defendant Wyndham.  Her initial e-mail is attached

hereto and incorporated herein as Exhibit "E".: and,

28.     A case number had allegedly been assigned: CDCR-209802023. Plaintiffs did not hear

from Ms. Lacy for almost a month after the initial message and, thus, Plaintiff Donna Marie

Smith (hereafter Mrs. Smith) sent Ms. Lacy an e-mail asking what was going on with the alleged

"investigation" on or about September 18,2023.  See attached Exhibit "F".  On that same day

Plaintiffs received a reply from Ms. Lacy saying that it was taking some time to review

everything. Plaintiff Mrs. Smith replied to her the next day (Sept. 19, 2023).  Said response and

Ms. Lacy's previous e-mail is attached hereto and incorporated herein by reference as Exhibit

"G"; and,

29.     To this day, NOTHING has been resolved and Ms. Lacy and/or Defendant Wyndham

have stopped communicating with Plaintiffs. Plaintiffs are still locked out of their Club

Wyndham account (we can log in but cannot proceed to "check-out" with any vacation

destinations we have found that are available to us on their web-site).; and,

30.     Additionally, Plaintiffs have received letters from Defendant Wyndham titled, "FINAL

NOTICE OF INTENT", attempting to collect on the disputed contracts (alleged) – which have

now been voided due to Defendants' silence.  One of those notices are attached hereto and

incorporated herein by reference as Exhibit "H"; and,

31.     After receipt of those "Notice[s]" Mrs. Smith sent Ms. Lacy another e-mail.  Said e-mail

is attached hereto and incorporated herein as Exhibit "I"; and,

32.     Additionally, on two (2) separate dates at two (2) different Wyndham Resorts, Plaintiffs

attempted to meet with Wyndham personnel in person, asking them for a sit-down talk about

questions we had.  However, they never contacted us back, as to a day and time they could meet

with Plaintiffs. They, again, remained silent; and,

33.     One of the times noted in paragraph 32, above, was at the same Wyndham Resort

(Pompano Beach) where Plaintiffs were enticed to trade for the Wyndham Midtown 45 at New

Your City by Defendant Manzella.  When we asked, we were told that Defendant Manzella was

still employed there as a salesperson there. Thus, we asked to speak with him while we were

there for the week. He failed to contact us at all. Plaintiffs can safely assume that he was told of our complaints and was most likely told not to talk to us; and,

34.    Thus, Plaintiffs have no recourse but to file this Complaint. Plaintiffs find it curious that all of a sudden, the "owner updates" that we had encountered on every other vacation with them - prior to these last two dates as noted herein above stopped. The $100.00 gift card offers also ceased and Plaintiff have not been able to book any more trips, since. Plaintiffs ask: If the Defendants (all) have done nothing wrong, then why are they so afraid of meeting with us to discuss our complaints; and,

## FACTUAL ALLIGATIONS

35.    Wyndham's parent company, Wyndham Destinations Inc. now known as Travel + Leisure Co., trades on the New York Stock Exchange under the ticker name WYND. It is the largest timeshare ownership program in the world with 925,000 members and over $5 billion in revenue in 2017. It develops and operates a portfolio of over 220 resorts throughout the world with 25,000 individual units; and,

36.    Time and time again, Wyndham makes the same misrepresentations to consumers (as they did with Plaintiffs – over nine (9) times, as a matter of fact) as to the fundamental aspects of its timeshare program including the value of timeshare points, the availability of properties to book for vacation, the maintenance fees involved, the transferability of points, the cleaning services available, the advance booking time required for reservations, the booking fees, the expiration date of points, and the cost of travel through Wyndham versus using websites such as Trivago.com, Expedia.com and Google.com; and,

37.    Plaintiffs could have bought another home (or at least a vacation condo somewhere) for what we have spent on Defendant Wyndham's alleged vacations and there is a <u>real</u> possibility

Plaintiffs could lose the one we now reside in - because of being duped into believing Defendants' continued lies, misrepresentations and trickery; and,

38.     Wyndham (all Defendants) has failed to act in good faith and fair dealings with Plaintiffs/club members, who have invested over $175,000.00 of their hard-earned retirement money into; and,

39.     Wyndham's business model is premised on the false assumption that they can lie to consumers to get them to sign confusing, vague and ambiguous boilerplate contracts and that because then there is a purported written agreement, they have no liability for the lies. This is not good faith and fair dealings and is illegal; and,

40.     Wyndham/Defendant Corporations has been heavily sanctioned for its deceptive practices through state government penalties and orders requiring rescission of purchase contracts. Instead of reforming its practices, they have doubled down on the deception and of preying on the elderly, such as Plaintiffs; and,

41.     Our encounters with Defendant Wyndham started on or about March 10th, 2020. However, while doing research for this complaint, we have learned that since 2003, there have been a steady stream of adverse awards against Wyndham as well as settlements forcing them to pay damages, penalties and grant rescission of contracts.  Plaintiffs were completely unaware of this fact in March of 2020, or we would have never gone to the first "presentation"; and,

42.     In October 2003, the California Attorney General and the District Attorney for the County of San Mateo sued Trendwest Resorts, the predecessor of Wyndham, for its unlawful sales practices and material misrepresentations. The case was settled with Trendwest agreeing to an injunction barring it from further violations and requiring it to offer rescission to customers. It also had to pay $795,000 in civil penalties. The estimated total value of the settlement was $ 4.3

11

million. The California Attorney General issued a press release about the settlement saying "Trendwest (predecessor to Wyndham) misled consumers through deceptive sales practices and non-disclosure, and illegally denied consumers the ability to cancel their contracts. Trendwest will pay restitution to Consumers and $795,000 in Civil Penalties", October 29, 2003, https://oag.ca.gov/news/press-releases/attorney-general-lockyer-settles-lawsuit-against-one-worlds-largest-timeshare; and,

43.     In 2007, California customers sued Wyndham in a class action. The case settled on a class basis. *(Wixon et. al. v. Wyndham Resort Development Corp.*, N. D. Cal. Case No. C 07-02361.) The settlement class consisted of California residents, and persons who entered into transactions in California, who bought Worldmark timeshare interests from Wyndham. The settlement was for persons who purchased timeshares before November 5, 2006. Wyndham agreed to cancel 22 million vacation credits; it made changes to its timeshare program; and it agreed to pay class counsel up to $5 million in legal fees; and,

44.     In 2015, the State of Wisconsin sued Wyndham for rescission of timeshare purchase contracts with 29 owners. As part of a settlement, Wyndham agreed to pay $665,000 in restitution, a $99,520 civil fine, $62,702.20 in fees and costs, and to rescind the contracts. (Sauk County Wisconsin Case No. 2015CX000005). The Wisconsin Department of Agriculture, Trade and Consumer Protection alleged that Wyndham sales personnel had made misrepresentations inconsistent with purchase contracts, telling customers gift incentives were available for one day only, and not disclosing on first contact with prospects that a timeshare sale was being offered. The restitution and debt relief were as high as $84,698 for one Madison, Wisconsin couple. After the settlement, Wyndham issued a press release promising to "meet the highest standards of fairness and transparency to consumers". Wyndam has miserably failed on this; and,

12

*45.*     In 2016, a Wyndham whistle blower employee was awarded $20 million *(Williams v. Wyndam Vacation, Ownership, Inc.*, San Francisco Superior Court, Case No. CGC- 12-526187) after being wrongfully terminated. The whistle blower exposed that Wyndham defrauded elderly Customers (such as Plaintiffs), opened and maxed out credit cards without their knowledge (as with Plaintiffs), and lied about fees. In its rulings on post-trial motions, the Court found that "Wyndham's San Francisco site was defrauding many customers, mainly the elderly... When timeshare sales were off, Wyndham had 'TAFT Days' – *"Tell Them Any Frigging Thing"*. (See *Williams*, *supra*, Slip Op. at pp. 1-2 dated March 10, 2017); and,

46.     On August 2, 2017, Wyndham Worldwide issued a press release that it would separate into two publicly traded companies. It announced that Wyndham Vacation Ownership would be the world's largest publicly traded timeshare company. Wyndham Vacation Ownership joined with RCI. RCI was the world's first and largest vacation exchange network with over 4,300 affiliated properties in more than 100 countries. The joinder of Wyndham Vacation Ownership and RCI was to provide purchasers of Wyndham points with the widest possible availability of timeshare units for vacation usage. In the press release announcing the change, Michael Brown, CEO of Wyndham Vacation Ownership, stated:

*"By joining the largest timeshare company in the world with the largest timeshare exchange network and connecting them seamlessly to the Wyndham Rewards platform, we will be positioned to provide the widest variety of vacation opportunities to our owner base and network affiliates…"*[4]

On its website, Wyndham Destinations Inc. boasts that it has over 4,300 vacation destinations, over 20 brands, and that as the world's largest vacation ownership, exchange and rental company,

---

[4] *Wyndham Worldwide Announces Plan to Become Two Publicly Traded Hospitality Companies*, Wyndham Destinations Press Releases (August 2, 2017).

it makes every trip a perfect vacation experience. And the latest news is that Wyndham has recently merged with Travel + Leisure; and,

47.     In the traditional timeshare business model, a participant purchased a fractional interest in a specific piece of property. The member would own the right to a specific week of occupancy in a particular unit in a specific identified property. The participant could then be entitled to trade that week of ownership for a week in another property. However, if the member did not trade his or her week, he or she was guaranteed the right to stay in the identified week in the identified property; and,

48.     In the Wyndham model, participants purchase points which are supposed to be currency to stay at any Wyndham or affiliated resort throughout the world. Fundamental to the Wyndham sales and marketing pitch is that purchasers will have a dizzying array of choices and will be able to stay at their desired property wherever it might be. Purchasers buy points so they can travel to their desired location whether it is Scotland, Colorado, Hawaii or some other place; and,

49.     The fact is, however, that desired destinations are not available at the desired time and have to be booked sometimes as much as a year in advance, assuming they are even available (and is heavily dependent on the number of points they own). The sales pitches Wyndham makes are false and misleading.  It also seemed to Plaintiffs that the more we spent on Wyndham "points" the worse accommodations we were given and when we complained Plaintiffs were told that they were completely booked and could not move us; and,

50.     The business practice of Wyndham is to focus on selling points, rather than managing the destinations and making them available to members. Wyndham members find that there is little availability. When they complain, Wyndham's response is that they need to buy more points (as they have done with Plaintiffs); and,

51.     Wyndham members are subject to a life-long frenzied marketing pitch to buy more points and upgrade their membership. Unfortunately, Plaintiffs are a good example of this. When a member arrives for a vacation at a destination, the sales pitch starts many times before they have even parked their car. A common Wyndham ploy is not to give a parking pass to a member until they agree to attend an "owner update meeting". The purported owner update meeting is nothing more than another high-pressure sales presentation to get them to buy more points (as they have done to Plaintiffs on every single vacation ever taken with them[5]). These meetings last most of a day and do not conform to most consumers' idea of a "vacation day"; and,

52.     After getting consumers to sign form contracts through deceptive sales practices, Wyndham then breaches its form contract entitled "Security Agreement – Club Wyndham Access Vacation Ownership Plan - Retail Installment Contract - Purchase and Security Agreement" by not making destination accommodations available, by charging excessive fees not referenced in the contract, and by failing to provide promised ancillary services such as cleaning and housekeeping; and,

53.     Wyndham also has a policy and practice of "Drip Pricing" similar to "Drip Sales" where customers are lured into an "owner update" (such as Plaintiffs experienced) and are told that one could save money on maintenance fees by switching to a deeded property, where supposedly, the maintenance fees are lower and those fees supposedly remain constant (as Plaintiffs were also told).  However, in most cases, that is not what ends up happening. Wyndham uses unethical sales pitches and offers products that are not value for money spent. Wyndam (all Defendants)

---

[5] Plaintiffs do not recall a problem with parking passes tied to "owner updates" but we were bribed (offered $100 gift cards and/or free dinners) into going to the "owner updates" at check-in on every vacation, except those taken after our dispute with the Defendants began on or about May 31, 2023.  More about this has already been discussed above.

have failed to act in good faith and fair dealings in their anxiousness to entice more unsuspecting victims, such as Plaintiffs to purchase more products/points; and,

54.   The Wyndham sales presentations follow the same pattern. The key elements are:

a. As was the case in the State of Wisconsin action, prospects are not told up front that they will be attending a lengthy high pressure Wyndham timeshare sales meeting – otherwise, few, if any, people would show up;

b. Prospects staying at a Wyndham owned hotel or resort are enticed to attend the timeshare sales meeting by the offer of a free gift, free trip, discount coupon or prize;

c. Purchasers are lied to about how long the meeting will last – the sale pitch is that if you just attend this one hour or 90-minute meeting, you will "earn" the offered gift or prize;

d. In reality, the sales presentations usually last five or six hours;

e. Potential customers are physically worn down by the length of the meetings;

f. The Wyndham strategy is to break down the prospective purchaser's resistance to buying by relentless physical and psychological pressure;

g. Prospects are told that they need to buy for the sake of their children, to be able to leave the points to their children, to spend time with their families and to fulfill their dreams of being able to vacation anywhere in the world;

h. People are kept in the meetings for hours at length by free food, the offered gifts and a never-ending barrage of "special" bonus points if they sign a contract right away;

i. Whenever someone shows resistance, the sales person leaves to consult with a manager and then comes back to offer special bonus points, some type of additional prize or gift, and the offer of a higher level of membership;

j. The sales pressure is relentless throughout the day;

k. Wyndham makes it difficult for people to leave by the threat of losing their prizes, and other tactics such as checking in purses and transporting attendees in vans to off site locations so they have no simple way to return;

l. One-on-one sales pitches are made throughout the day and a prospective purchaser is often assigned one person who stays with them the entire time to

befriend them;

m. A false sense of urgency is created with repeated use of phrases such as "one time offer" and "today only" to create the impression that prospects can never have the same opportunity again.

Thus, if this was all there was to it, it would simply be a high-pressure sales environment akin to being locked in new car dealership for most of the day. However, individuals such as Plaintiffs are repeatedly lied to about the material elements of the program including misrepresentations that points will not expire, that units will be available, that maintenance fees will not increase, that long advance booking time is not required, and that points are easily transferable or marketable; and,

55.    Plaintiffs presently own 611,00 points that will expire 31 March, 2024, if not used.  At the moment, since we are locked out of using those points, we will lose them (money gone down the drain) if we are not granted immediate emergency injunctive relief against Defendant Wyndham Resorts Vacation Club by this Court; and,

56.    Defendants' sales people are trained to make material misrepresentations.  Several suits brought by other Plaintiffs have brought out specifics on this, that Plaintiffs have discussed herein above[6]; and,

57.    A Wyndham Owner who wants to stay at a Wyndham destination will typically find that when a room is not available through Club Wyndham, he or she can go on expedia.com and book the same resort at a much cheaper price than through their timeshare. There is no benefit to owning a Wyndham timeshare. It is a liability, not an asset.  This, Plaintiffs have learned the hard way; and,

---

[6] See earlier discussion as to the whistle blower complaint filed by former Wyndham sales people Patricia Williams and Steve Gutfield against Wyndham (Superior Ct. State of California, San Francisco County Case No. CGC 12-526187) lays this out in excruciating detail.

17

58.     Since the Wyndham contracts are voidable, clauses within the contracts waiving class actions, jury trials, and punitive damages are not enforceable and, also, any demand for arbitration clauses are unenforceable; and,

## THE PROBLEM WITH WYNDHAM'S ARBITRATION CLAUSE

59.     While doing research for this Complaint Mrs. Smith has learned that the American Arbitration Association (AAA) refuses to administer arbitration claims against Wyndham because Wyndham fails to comply with the AAA's policies regarding consumer claims and, thus, have declined to administer claims between Wyndham Vacation Ownership and its consumers at this time; and,

60.     Plaintiffs are informed and believe that one reason the AAA refuses to hear arbitration cases against Wyndham is that Wyndham's arbitration clause violates Principle 7 of the AAA Consumer Due Process protocol. Principle 7 mandates that arbitrations must be conducted at locations reasonably convenient to both parties. However, the Wyndham clause requires that any AAA arbitration proceed only in Orange County, Florida, even though Wyndham Owners live all over the country: and,

61.     The AAA has removed Wyndham from its Consumer Clause Registry. The AAA Registry lists companies for whom the AAA will administer consumer arbitrations. Wyndham are not on the list; and,

62.     In the last five + years, the AAA has only closed seven cases against Wyndham. This number is incredibly small since in any given year, thousands of Wyndham consumers seek to cancel their timeshare contracts. Six of the seven AAA cases settled or were withdrawn. Plaintiffs are informed and believe that the reason so few cases go to arbitration is that Wyndham fails to comply with AAA Consumer Arbitration Rules; and,

63.     In the past, if Wyndham was sued by a consumer, Wyndham would move to compel

arbitration (which Plaintiffs believe they will attempt to do herein). However, if a consumer

arbitration is filed, the arbitration cannot proceed because of Wyndham's failure to comply with

AAA Rules. Wyndham cannot demand arbitration one minute and fail to comply with AAA

Rules the next minute. This is only one example of their bad faith and unfair dealings with

members/owners; and,

64.     Wyndham has failed to tell Plaintiffs that they will be unable to use their timeshares to

stay at their desired locations at their desired times. If Plaintiffs had been told this fact, they

would have never bought into Wyndham. Wyndham's agents omitted to tell Plaintiffs that

destinations we desired would not be available and that we would not be able to use those points

to make reservations where they desired.  Plaintiffs relied on the omission to our detriment. Had

the true facts about availability been disclosed to Plaintiffs, we would not have purchased the

timeshare. This omission is a fraudulent inducement to enter a contract and it renders the contract

voidable and rescindable; and,

65.     The AAA declined to administer the disputes and will not hear any arbitrations between

Wyndham and any consumers. The AAA removed Wyndham from its Consumer Clause Registry

on its website, www.adr.org/clauseregistry. This Registry lists all companies that have valid

consumer arbitration clauses on file with the AAA. Customers of Wyndham have to proceed in

court to resolve their disputes; and,

66.     Based on these facts, Defendants herein have no right or factual basis to demand

arbitration in leu of trial on the merits; and,

67.     Thus, Plaintiffs seek a declaration that the arbitration clause in their contracts is not

enforceable and that the contracts are voidable and rescindable. Plaintiffs also seek a declaration

19

that the Wyndham contracts are rescindable. They were induced by a fraudulent omission, and many others bad acts too numerous to list herein; and,

## PLAINTIFFS SEEK DAMAGES BASED ON FRAUD

68.     A parallel fraud claim was pled by the plaintiffs in *Buxton v. Wyndham Vacation Resorts, Inc.* (No. 19-cv-1555-Orl-37DCI), *Campbell v. Wyndham Vacation Resorts, Inc.* (No. 19-cv-01556-Orl-37DCI), *Blessing v. Wyndham Vacation Resorts, Inc.*, (No. 19-cv-1613-Orl-37DCI); *Chandler v. Wyndham Vacation Resorts, Inc.*, (No. 19-cv-1647-Orl-37DCI), and *Mason v. Wyndham Vacation Resorts, Inc.*, (No. 19-cv-1613-Orl-37DCI). On April 22, 2020, Judge Roy B. Dalton, Jr. issued an Order denying Wyndham's motion to dismiss the fraud claim; and,

69.     Since Plaintiffs' contracts (initial, and all others since then) were induced by fraud, the jury trial waiver clause and punitive damage exclusion clause are not enforceable since the entire alleged agreement(s) are void *ab initio*; and,

## PUNATIVE DAMAGES SHOULD BE ASSESSED

70.     Plaintiffs' contracts purport to exclude punitive damages, but the contracts are voidable. For nearly twenty years, Wyndham has been sanctioned for its deceptive practices through state government penalties, orders requiring rescission of purchase contracts and a $20 million verdict in a whistle blower case. Instead of reforming its practices, Defendants have doubled down on their deceptions. The only way that Wyndham will bring honesty to its sales practices is if punitive damages are assessed; and,

71.     Since Plaintiffs' contracts are voidable and rescindable, the clause limiting punitive damages does not apply; and,

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

72.     Plaintiffs repeats and realleges Paragraphs 1 to 71, herein; and,

73.     It is well established that every contract has an implied covenant of good faith and fair dealing with respect to the parties' performance and enforcement of the agreement. The covenant imposes an obligation on parties to act in good faith and deal fairly with other parties to the contract, even though this duty is not specifically stated in the agreement; and,

74.     The implied covenant of good faith and fair dealing has been recognized by the courts for over 80 years, when it was first defined as a covenant "*that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.*" This early definition remains the general standard that is still applied today; and,

75.     By their silence, Defendants (all) have shown that they have no intention on acting in good faith and fair dealings as to the questions/complaints presented to them, as enumerated hereinabove; and,

76.     Defendants breached this rule when they acted in ways that obviously undermine the benefits to the Plaintiffs (other party from the alleged contract(s)) by: (1) ignoring the letters written to them on multiple occasions; (2) locking Plaintiffs out of scheduling and/or "booking" any further vacations, all the while ignoring (remaining silent) as to Plaintiff's complaints; (3) repeatedly refusing to meet with Plaintiffs when asked for in-person discussions with Defendants; and,

77.     As a matter of fact, on or about May 15, 2023 Plaintiffs personally appeared at the sales/business office located at Club Wyndham Ocean Blvd., Myrtle Beach, S.C. and met with four (4) individuals employed by Wyndham (names unknown) and stated that we had unresolved questions/disagreements regarding the last two (2) alleged contracts. They all got up and left the table and stated that they would contract the appropriate Wyndham officials to assist Plaintiffs in

answering our questions.  Once again, Wyndham continued to remain silent (hide from us) and no one ever got back with Plaintiffs to discuss our concerns. See the last paragraph of page 4 of Exhibit "A"; and,

## DEMAND TO REQUIRE PERFORMANCE OF A CONTRACT

78.     Plaintiffs repeats and realleges Paragraphs 1 to 77, herein; and,

79.     As noted hereinabove, on or about May 27, 2023 Plaintiffs presented Defendants with an 'OFFER TO PERFORM'.  Again, see Exhibit "A".  Therein, Plaintiffs enumerated eight (8) elements that Plaintiffs requested answers to.  The Defendants remained silent and have breached the contract(s); and,

80.     O.C.G.A. 11-2-609 – particularly - (1) and (4), gives Plaintiffs a right to adequate assurance of performance of the alleged contracts between Plaintiffs and Defendants; and,

81.     O.C.G.A. 13-3-4 states, in part: "...*The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties*."  Emphasis added, pertinent parts; and,

82.     In said Notice/Offer, Plaintiffs made it clear that if Defendants objected to any part of said Notice/Offer that they must be immediately stated and must be specified.  Defendants did neither of the two.  Thus, Defendants have acquiesced.  By their own conduct, they have deliberately ratified all of the Plaintiffs assertions therein (and also herein) as factual; and

83.     Plaintiffs thus, respectfully requests that this Honorable Court demand that Defendants rescind/revoke all alleged contracts between Plaintiffs and Wyndham and demand that Defendants return all costs of said alleged contracts to Plaintiffs and, additionally, to award Plaintiffs appropriate damages and costs of this suit; and,

## WYNDHAM CONTRACTS ARE UNCONSCIONABLE CONTRACTS

84.     Plaintiffs repeats and realleges Paragraphs 1 to 83, herein; and,

85.     An unconscionable contract is one that is so one-sided or so unfair that it shocks the conscience. The court usually deems such contracts unenforceable either in whole or in part, depending on if the entire contract is unconscionable, or if only certain terms or provisions identified therein are unconscionable. A court will usually look at two main factors when determining unconscionability: (1) Bargaining power, i.e., oppression and (2) Unfair terms, i.e., surprise; and,

86.     Defendants' contracts are written to give them much more "bargaining power" and is oppressive. A customer who signs on the "dotted line" of their documents have a very limited window for cancelling it (usually 3-10 days depending on the law of the state they are located in). Even then, there have been many lawsuits filed against Defendants, wherein Defendants refused to allow the customer to rescind the contracts – even when they were notified within the time limitation- and threatened legal action (such as foreclosure) against them; and,

87.     Additionally, if a customer attempts to sue them, they put requirements in the contracts that say every complaint must go through arbitration.  See the discussions on this herein above. Every bit of Defendant Wyndham's contracts are written to favor Wyndham, giving Wyndham more bargaining power than its customers.  This is oppressive, unfair and unconscionable; and

88.     Defendants have also written their contracts with unfair and misleading terms (sometimes not even defining the terms – as previously described hereinabove) and leave customers (such as Plaintiffs) surprised to learn that they are prevented from using their weeks or points – due to those unspecified terms (as with Plaintiffs, who are presently prevented from using points that have been paid for); and,

23

89.     Defendant Wyndham unduly influenced Plaintiffs into putting our handwriting on their documents (as described herein above).  Additionally, Plaintiffs were put under duress to put our handwriting on their documents.  Plaintiffs felt pressured to do so (after spending over $100,000 on Defendants' vacation club) in order (as we were led to believe) to save money on the monthly "maintenance" fees, which, after each "owner update" had increased considerably; and,

90.     Defendants prayed on Plaintiffs who are in our 70's (and who live on a fixed income - Social Security Insurance benefits), using their superior knowledge of the process, and making false promises, trying to persuade the Defendants into signing the agreement(s) to trick us into placing our handwriting on their documents and becoming indebted to Defendants for thousands, if not hundreds of thousands of dollars; and,

91.     Therefore, every one of Defendants' alleged contracts ever allegedly signed by Plaintiffs must be voided as unconscionable contracts; and,

## FRAUD IN TRUTH IN LENDING AND FRAUDULENT INDUCEMENT BY OMISSION

92.     Plaintiffs repeats and realleges Paragraphs 1 to 91, herein; and,

93.     The fraud statute does not define the phrase "obtained by fraud." Fraud is defined by nontechnical standards and is not to be restricted by any common-law definition of false pretenses; and,

94.      One court has observed, *"[t]he law does not define fraud; it needs no definition; it is as old as falsehood and as versatile as human ingenuity."* Weiss v. United States, 122 F.2d 675, 681 (5th Cir. 1941), cert. denied, 314 U.S. 687 (1941); and,

95.     The Fourth Circuit, also noted that "*fraud is a broad term, which includes false representations, dishonesty and deceit.*" See United States v. Grainger, 701 F.2d 308, 311 (4th Cir. 1983), cert. denied, 461 U.S. 947 (1983); and,

24

96.    Defendants knew of the falsity of the omission in their contracts or were recklessly indifferent to its falsity and Defendants intended that Plaintiffs rely on the omissions and falsities; and,

97.    Plaintiffs actually and justifiably relied on the misrepresentations and omissions and thereby sustained injury and loss; and,

98.    By reason of the omission, Plaintiffs were fraudulently induced to enter into alleged contracts with Defendants; and,

99.    Defendants' actions were willful, wanton and malicious so as to allow the recovery of punitive damages. The contract's alleged punitive damages exclusion fails since the contracts are voidable and/or null and void; and,

### REQUEST FOR DECLARATORY AND INJUNTIVE RELIEF

100.    Plaintiffs repeats and realleges Paragraphs 1 to 99, herein; and,

101.    The authority for a federal court to grant declaratory judgments is in 28 U.S.C. Sec. 2201-2202. Sec. 2201 allows declaratory judgments in "a case of actual controversy.".  Here there is an actual controversy; and,

102.    As stated in hereinabove, Plaintiffs made a good faith effort to right the wrongs of, particularly, the last two (2) alleged contracts.  Defendants completely ignored the three (3) written attempts by Plaintiffs to address our complaints with Defendants, and have acted in bad faith and unfair dealings; and,

103.    As also stated herein above, Defendants have refused to meet with Plaintiffs in-person on three (3) separate occasions in an attempt by Plaintiffs to address the issues raised in the Notice/Offer served upon Defendants on or about June 5, 2023; and,

104.    Plaintiffs herein respectfully ask this Court for a Declaration that by their silence the

Defendants have acquiesced (agreed) that Plaintiffs were treated poorly and deceitfully and the

Defendants have thus agreed that they acted in bad faith and unfair dealings with regard to

Plaintiffs' complaints; and,

105.    For a Declaration that the arbitration and jury trial waiver clauses in the alleged contracts

with Plaintiffs are null and void; and,

106.    For a Declaration that Plaintiffs are now entitled to every penny paid to Wyndham, from

the outset, and must be refunded to Plaintiffs; and

107.    For a Declaration that all alleged contracts with Defendants are hereby

rescinded/cancelled; and,

108.    Plaintiffs further ask this Honorable Court for an emergency temporary injunction against

Defendants in which it is Ordered that Defendants un-lock the hold they have against Plaintiffs

on the Club Wyndham web-site, denying Plaintiffs the right to use the points (611,000) (i.e.:

schedule vacations trips) that Plaintiffs have paid for – in full; and,

**PRAYER FOR RELIEF**

109.    Plaintiffs repeats and realleges Paragraphs 1 to 108, herein; and,

Plaintiffs pray:

110.    For an order that Defendants, be permanently enjoined from engaging in the unlawful

activities and practices complained of by Plaintiffs; and,

111.    For a declaration that the arbitration and jury trial waiver clauses in Plaintiffs contracts

are null and void;

112.    For an injunction against Defendants entering into new contracts which have AAA

consumer arbitration clauses; and,

113.    For cancellation of all contracts with Defendants; and,

114.    For restitution of all monies paid to Defendants totaling $175,000; and,

115.    For compensatory damages to be determined at a later time; and,

116.    For punitive damages, to be determined at a later time; and,

117.    For treble damages under the Consumer Protection Procedures Act and the

consumer protection statutes of other States with similar acts; and,

118.    For costs involved in the litigation of this complaint; and,

119.    Such further and other relief as this honorable Court deems appropriate.

Respectfully Submitted this _____ 15th _____ day of February, 2024

By our own signatures, Plaintiffs are reserving all rights, waiving none.

Ernest Welch Smith, *pro per*
4455 Sagebrush Drive NW
Kennesaw, GA 30152
404-539-8689

Donna Marie Smith, *pro per*
4455 Sagebrush Drive NW
Kennesaw, GA 30152
Cell: 404-281-4763
donnamarie_smith@comcast.net

UNTIED STATES DISTRICT COURT
FOR THE NORTHN DISTRICT OF GEORGIA
ATLANTA DIVISION

Donna Marie Smith,                          )
Ernest Welch Smith,                         )
                                            )
Plaintiffs,                                 )
                                            )
Vs.                                         )          Civil Action No.: _____
                                            )
WYNDHAM VACATION                            )
(RESORTS) OWNERSHIP, INC., et al            )
                                            )
Defendants                                  )

## ORDER

The within and forgoing Plaintiff's request for an emergency temporary injunction

against Defendants Wyndham to un-lock access to booking vacations/trips through the Club

Wyndham web-site (membership # 00203680965) having come before me, and, after

considering the same, IT IS HEREBY CONSIDERED, ORDERED AND ADJUDGED that

Plaintiffs' request for temporary and emergency injunction be GRANTED.


SO ORDERED, this _____ day of _____ 2024.


_____,
U.S. District Judge for the Northern District of Georgia,
Atlanta Division



Prepared and respectfully presented by:
Donna Marie Smith

The Smith's
4455 Sagebrush Drive, NW
Kennesaw, Ga 30152

May 27, 2023

From: Donna Marie Smith,
And Ernest Welch Smith

To: Wyndham Vacation Ownership, Inc.
And, Sujaily Santia
And, Michael Manzella
Business address: 6277 Sea Harbor Drive
Orlando, Fl. 32821

Re: Alleged Contract No's: 00125-2200710 and 00039-2300022

Certified Mail No.: 7019 0140 0001 0660 2454

### NOTICE AND OFFER OF PERFORMANCE TO PAY ALLEGED OBLIGATION IN FULL OR AGREED INSTALLMENTS

It has come to our attention that you, Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc. (and/or Club Wyndham) may claim that we (Donna Marie Smith & Ernest Welch Smith), owe certain obligations to you. We do not believe there to be any validity, truth or accuracy to such a claim.

It is certainly possible that you Wyndham Vacation Ownership, Inc. (and/or Club Wyndham) has made a mistake and erroneously enticed the Undersigned to purportedly place our handwriting on two documents/papers (Contract No's: 00125-2200710 and 00039-2300022) by saying it would somehow "save money" that we do not believe had/has any factual or reasonable basis. However, we do not want to go on disputing this matter with you. It is our intent to resolve this problem as quickly as possible so as to avoid further delay regarding this matter.

Therefore, this NOTICE AND OFFER constitutes our good faith offer to perform as to those alleged "contracts", if Mr. Santia and Mr. Nazella and

1

Exhibit "A"

Wyndham Vacation Ownership, Inc. (and/or Club Wyndham) can show reasonable basis of the claims.

Although reference is made herein to the Official Code of Georgia Annotated's statutory language, hereafter referred to as 'O.C.G.A.', I certainly do not rely upon any statutes, state or federal, for the legal significance of this offer. The statutes of Georgia's Civil Codes are quoted herein merely as an aid to understanding the nature and meaning of an offer of performance. The existence of these statutes is clear evidence that tender of this type has been used effectively and extensively for commercial and business purposes throughout the history of America. The legislature of other states has done the same thing and numerous state courts have created a well-established body of law with regard to an offer of this type.

This is an offer of performance and you may either accept this offer, reject this offer, or object to the mode of this offer.

## OFFER TO PERFORM

This is an *offer of performance* with intent to extinguish the alleged debt(s). As noted above, as an aid to understanding the nature and meaning of this offer, please note the following language from the statutes:

O.C.G.A.11-2- 206 1(a) and (2):  Offer and acceptance in formation of contract.

(1)     Unless otherwise unambiguously indicated by the language or circumstances: (a) An offer to make a contract shall be constructed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(2)     Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance.

O.C.G.A. 11-2-207: Additional terms in acceptance or confirmation.

(1)     A definite seasonable expression or acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2)     The additional terms are to be constructed as proposals for addition to the contract between merchants such terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

2

(3)     Conduct of both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings or the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

O.C.G.A. 13-5-30(1).

To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him:

(1)     A promise by an executor, administrator, guardian, or trustee to answer damages out of his own estate.

O.C.G.A. 11-2-106(1) and (3): Definitions: "contract"; "agreement"..., "termination"; cancellation."

(1)     In this article unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present sale of goods and a contract to sell goods at a future time....

(3)     "Termination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On "termination" all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.

These statutes all mean essentially the same thing: that only unless the Undersigned(s) have agreed to another's offer to contract, would there be an agreement and/or contract between another and Undersigned(s).

O.C.G.A 11-3-601(a). Discharge and effect of discharge.

(a)     The obligation of a party to pay the instrument is discharged as stated in this article or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract.

O.C.G.A. 11-3-603 (a) and (b). Tender of payment.

(a)     If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b)     If tender of payment of an obligation made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party having a right of recourse with respect to the obligation to which tender relates.

And, O.C.G.A. 11-2-511: Tender of payment by buyer; payment by check.

3

(1) Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete any delivery.

(2) Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

In other words, an obligation is extinguished by an offer of performance, made in conformity to the rules prescribed, and with the intent to extinguish the obligation and an offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is if not accepted, equivalent to the actual production and tender of the money, instrument or property.

O.C.G.A. 11-1-207: Performance or acceptance under reservation of rights.

(1)     A party who, with explicit reservation of rights, performs or promises to performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest" or the like are sufficient.

Also take note of O.C.G.A. 13-5-30(6).

To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him:

(6)     Any promise to revive a debt that is barred by a statute of limitation.

O.C.G.A. 11-1-201. Time; reasonable time; "seasonably".

(1)     Whenever this title requires any action to be taken within a reasonable time, and any time which is not manifestly unreasonable may be fixed by agreement.

(2)     What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action.

(3) An action is taken "seasonably" when it is taken at or within the time agreed or if not time is agreed at or within a reasonable time.

Again, since Undersigned(s) have "seasonably" noticed you and Wyndham Vacation Ownership, Inc. on or about May 15, 2023 by personally appearing at the business offices located at Club Wyndham Ocean Boulevard, that the Undersigned(s) have reserved all rights regarding this matter, and Undersigned(s) have also "seasonably" notified that there are unresolved questions/disagreements/problems regarding the alleged above noted "contracts" and now you and Wyndham Vacation Ownership, Inc. have waived any right to place a claim on that alleged debt as you all have shown *bad faith* by refusing to contact us as to this matter (over 12 days later).

4

## CONDITION PRECEDENT

This offer to pay a certain sum, which Wyndham Vacation Ownership, Inc. (and/or Club Wyndham) assert is due, is made dependent upon performance of condition precedent to which we are entitled by the fundamental principles of the American Jurisprudence and Law, namely presentation of documentary evidence showing the factual grounds for the alleged debt, to wit:

1.      Documentation of facts necessary to establish that we, the Undersigned(s), are specifically, and unequivocally made liable by law, and clearly identifying the particular statute (s), codes and regulations that allegedly created the debt claimed by Wyndham Vacation Ownership, Inc. and Mr. Santia, Mr. Manzella .

2.      Documentation of the facts necessary to establish that, we, the Undersigned(s), are specifically and unequivocally made liable by a statue staple: "Contract No's: 00125-2200710 and 00039-2300022" and that the Undersigned(s) were given full knowledge and an opportunity to exercise the fundamental rights of *due diligence* and *due process* and the ability confront you all and address the unethical "Drip Sales", enticement and on-going luring of the Undersigned(s) into going to "owner updates" wherein the only reason for said "updates" is to lure us into buying products that are not value for money spent (of which the Undersigned(s) have already paid in full well over $90,000.00 - exact amount not fully calculated at this time) and are herein entitled to recoup all previous paid in full "contract" moneys.

3.      Document for the Undersigned(s) that these two (2) new alleged "contracts"/ obligations were not for the purpose of coercing persons of the Undersigned(s)' ages (72 and 71, respectively) into entering into alleged ten year (10) "contracts" that were known to Mr. Santia and Manzella to be financially burdensome on the Undersigned(s) and also document that said persons named herein honestly believed that it would not be difficult or out-right impossible for the Undersigned(s) to perform due to low monthly fixed incomes.

4.      Documentation that Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc., a corporation, operating under the color of law, legally obtained possession of the legal papers of Donna Marie Smith and Ernest Welch Smith.

5.      Documentation that Mr. Santia, Mr. Manzella and the Wyndham Vacation Ownership, Inc. are not denying the Undersigned(s) equal protection under the law, money, credit and agreement.

6.      Documentation that Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc. fully disclosed to the Undersigned(s), all material facts with respect to the Undersigned's' legal papers, when the Undersigned(s), acting in good faith were before Mr. Santia (on or about 12/17/2022) and Mr. Manzella (on or about 1/5/2023).

7.      Documentation that Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc. have any substance at risk when falsely convincing the Undersigned(s) that the above described "deals' on 12/17/2022 and again on 1/5/2023 would save Undersigned(s) allegedly much money by trading what we had already paid for in full and spending more moneys that was factually unnecessary.

8.      Documentation of how, when, and where Mr. Santia, Mr. Manzella or Wyndham Vacation Ownership, Inc. acquired ownership or control of the Undersigned(s) rights, title and interest in the Undersigned(s)' legal papers.

        Take note that if all of these above eight (8) elements cannot be met, then there is no liability to performance to any alleged "Contract No. 00125-2200710 and 00039-2300022 which we believe to be the case.

        Merely for its value as an aid to understanding the nature and meaning of an offer such as this, take note of:

        O.C.G.A. 11-2-176. Buyers right to specific performance or replevin.

        (1) Specific performance my be decreed where the goods are unique or in other proper circumstances.
        (2) The decree for specific performance may include such terms and conditions as to payment or the price, damages, or other relief as the court may deems just.
        (3) The buyer has a right of replevin for goods identified to the contract if after reasonable effort the buyer is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered. In the case of goods bought for personal, family, or household purposes, the buyer's rights of replevin vests upon acquisition of a special property, even if the seller had not then repudiated or failed to deliver.

O.C.G.A. 11-2-609(1) and (4): Right to adequate assurance of performance.

(1) A contract for sale implies an obligation on each party that the other's expectation of receiving due performance will not be impaired.  When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

## PERFORMANCE OF CONDITIONS PRECEDENT

In essence, when a debtor is entitled to the performance of a condition precedent to, or concurrent with, performance on his part, he may make his offer to depend upon the due performance of such conditions.

Please take note of:

O.C.G.A. 13-3-4.

Conditions may be precedent of subsequent.  A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party.  The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties.

O.C.G.A. 13-5-8.

A condition precedent or subsequent, not complied with, insufficiency or failure of consideration, or any act of the opposite party, by which the obligation of the contract was ceased, may be pleaded as a defense.

O.C.G.A. 13-5-10.

If in fact we are liable by law to pay you the alleged amounts on the alleged contracts, and we are subject to the jurisdiction, regulation, and control of the legislative entity which enacted the statutes, or we have an obligation by way of an alleged statute staple, and we have possession of property upon which this judiciary claims authority to control, then we are certainly entitled to the presentation of evidence sufficient to demonstrate the factual validity of these claims.

## PRESUMPTION OF GOOD FAITH AND FAIR DEALINGS

The law presumes men act fairly and honestly, that their dealings are in good faith and without intention to cheat, hinder, delay or defraud another, and if any transaction called in question is equally capable of two constructions, the other is fair and honest and the other dishonest, then in that case, the law presumes that transaction to be fair and honest.

Therefore, we are not going to jump to the conclusion that Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc. are manifestly attempting to "put one over" on the Undersigned(s) by attempting to coerce the Undersigned(s) to pay costs where none can exist and attempting to prevent the Undersigned(s) from cancelling/terminating said alleged Contract No's: 00125-2200710 and 00039-2300022 by fraudulent and deceitful means. Therefore, we make this good offer of performance with intent to extinguish the obligation(s).

## OBJECTIONS MUST BE IMMEDIATELY STATED

Although the principle is well established that if Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc. have any objection to this offer, its terms, or its mode, you have a duty in good faith to express objection to us immediately and not harbor hidden objections with which to surprise the Undersigned(s) at some later date.

We quote the following for its explanatory value in this regard, but we do not rely upon it as a legal basis for this requirement:

O.C.G.A. 11-3-311(a),(b), and (d).  Accord and Satisfaction by use of instrument.

(a) If a person against whom a claim is asserted proves that (i) such person in good faith tendered an instrument to the claimant as full satisfaction of the claim; (ii) the amount of the claim was unliquidated or subject to a bona fide dispute; and(iii) the claimant obtained payment of the instrument, then subsections (b), (c), and (d) of this code section shall apply.

(b) Unless subsection (c) of this Code section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant or an agent of the claimant having direct responsibility with respect to the disputed obligation knew that the instrument was tendered in full satisfaction of the claim.

8

This is, simply stated, saying that all objections to the mode of an offer of performance, which the claimant has an opportunity to state at the time of the person making the offer, and which could be then obviated by him, are waived by the claimant, if not then stated.

### OBJECTIONS TO TENDER MUST BE SPECIFIED

The person or persons to whom a tender is made must, at the time, specify any objections they may have to the money, instrument, or property, or must be deemed to have waived it, and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, they must specify the amount, terms or kind they require, or be precluded from objecting afterwards.

If, then, you and Wyndham Vacation Ownership, Inc. have any objection to this offer of performance, you and Wyndham Vacation Ownership, Inc. have the opportunity to state that objection and also the obligation imposed by the principles of good faith to do so.

If no objection is made, you and Wyndham Vacation Ownership, Inc waives the right to any objections at a later date.  As a matter of fact, that is now the case, as you and./or Wyndham Vacation Ownership, Inc., have remained silent regarding our initial personal meeting wherein we discussed this matter on May 15, 2023, and have acquiesced to said assertions, and are now estopped from asserting any rights regarding the alleged debt.  See <u>Monroe Motor Exp. V. Jackson</u> <u>38 S.E. 2d 863,74 Ga. App. 148</u>. (1946).

"Acquiescence" imports active consent, and is not to be inferred from acts which are doubtful or ambiguous…<u>Ocmulee river Lunber Co. v. Ocmulgee Valley Ry. Co.</u> <u>251 F. 161</u>(D.C. GA. 1917).

By your own conduct of passive compliance regarding Undersigned(s)' initial attempt to discuss the afore referenced alleged debt(s), you have ratified all the Undersigned(s)' assertions stated in the original personal meeting, as factual.

Ratification involves a full knowledge of the facts.  <u>Warner v. Hill 112 S.E. 478, 153 Ga. 510 (1922).</u>

### INTENT TO EXTINGUISH THE OBLIGATION

9

Furthermore, it should be noted that we are am making this offer of performance with the intent of extinguishing the obligation, be it a simple contract of a statute staple, and it is will established in American Jurisprudence that an obligation is extinguished by an offer of performance.

It should be possible for Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc., to immediately produce for our consideration the grounds upon which you assert your claim, if such exists.

If we receive no response from Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc, such lack of response is a rejection of this offer.  Of course, the only plausible explanation for such lack of response and rejection of this offer is that you, in error, obtained an invalid debt against the Undersigned(s), for which there is no factual or reasonable basis.

In the absence of acceptance (or objection to) this offer by Mr. Santia, Mr. Manzella and Wyndham Vacation Ownership, Inc., any further attempts by you to proceed to obtain a judgment and/or attempt to collect upon this alleged debt will obviously be nothing but malicious harassment with the intent to defraud and Barratry.

(If there are any questions regarding this tender, put them in writing for our consideration and we will be pleased to answer all correspondence, addressing any unresolved issue.  As always, our serious intent is to conclude this matter according to truth and the law.)

The courts of other states have consistently affirmed and upheld the nature, meaning, and effect of an offer such as this according to the common law codified by this state and other state legislatures.

A tender is an offer of performance made with the intent to extinguish the obligation.   When properly made, it has the effect of putting the other party in default if he refuses to accept it.

The rationale of the requirement of specific objection is that the offerer should be permitted to remedy any defects in his tender, the offeree is therefore not allowed to remain silent at the time of the tender and later surprise the offerer with hidden objections.

If the party we are tendering this to is not the proper party with the authority to accept this tender, then please notify me immediately and/or forward this on to the proper party.

We expect a response to this offer within a reasonable period of time, which under the circumstances should be within ten (10) days of receipt thereof.  If additional time is needed to consider this offer, such additional time should be requested in writing before the expiration thereof, and the reasons as to why an extension of time is required should be given in writing.

This offer is made in good faith by:

_Donna Marie Smith,_

AND

Ernest Welch Smith
4455 Sagebrush Drive NW

*This offer is made with reservation of rights, waiving none, without prejudice, and is made under protest and necessity.*

From:
Donna Marie Smith and Ernest Welch Smith
4455 Sagebrush Drive, Kennesaw, Georgia 30152

To:                                                                      June 17, 2023
Wyndham Vacation Ownership, Inc.
And
Wyndham Worldwide Corporation
Stephen P. Holmes, Jeff Myers, Mike Hug
<u>Headquarters Address</u>: 22 Sylvan Way, Parsippany, N.J. 07054

Exhibit
'B'

Certified Return Receipt Mail No.: 70/9 0140 0001 0660 2461

Re: Alleged contracts: 00125-2200710; 00039-2300022

To Whom it May Concern:

 Pursuant to our 'NOTICE AND OFFER OF PERFORMANCE TO PAY ALLEGED OBLIGATION IN FULL OR AGREED INSTALLMENTS' received by you, Wyndham Vacation Ownership, Inc, Mr. Antina and Mr. Manzella on or about June 5ᵗʰ, 2023 (see attached copy of the USPS green card as proof of said receipt) you are now in DEFAUT of responding to us and the alleged obligation(s) are now **extinguished**. See the attached document fully reproduced herein for your reference.

 The aforementioned tender has been made under protest, and under threat, duress and necessity in order to protect our inalienable rights regarding this matter and yet you all have remained silent.

 **In law, silence means acceptance.** Yet, with that silence, is seems that your company has taken the brazen stand to threaten us with locking our Wyndham Club membership because of said Offer! This is unacceptable and is actionable in a court of law.

 We herein reserve all rights, waiving none. See <u>O.C.G.A. 11-1-207</u>. We have a right to expect adequate assurance of due performance on your part pursuant to <u>O.C.G.A. 11-2-609</u> and to the presumption of '*good faith and fair dealings*' (see page 7-8 of the attached Offer).

 You have failed in said performance thereof, and as a result of said failure, the alleged obligation you say we owe is now **discharged.** See <u>O.C.G.A. 11-3-603</u>. As such, you are required by law to put us back in the exact same circumstances/position with your company as we were prior to 12/17/2022 and 1/5/ 2023, which includes a full refund on the two (2) down payments that were made at the time(s).

Govern Yourself Accordingly,

## AFFIDAVIT

The undersigned Affiant, being duly sworn on oath, deposes and says: That he/she is an officer of the below named lending institution, a nationally chartered commercial lending institution. That as an officer of said institution he/she has the authority to execute this Affidavit on behalf of the institution and to bind the institution to its provisions. It is understood that an exchange is not a loan. The institution loans to borrowers cash, or other depositors money to legally obtain possession of the promissory notes. No new money or credit is created and loaned when banks/institutions grant loans. The bank or lending institution does not deny borrowers equal protection under the law, money, credit and agreement. The bank or lending institution complies with and follows all Federal Reserve Banks rules, policies and procedures. The bank or lending institution fully discloses to each and every borrower all material facts with respect to all loan agreements as to whom is to loan exactly what to whom and if the borrower or if the lending institution funds the bank/institution loan check. That should it be discovered that I failed to be completely truthful as to any statement, that any and all loans or alleged loans issued or purchased at the bank or lending institution are forgiven, without recourse, and shall immediately be considered null and void.

Signed under penalty of perjury.

Signature of Lending Institution Officer_____.

Print Name of Officer:_____.

Name of Lending Institution:_____.

Address of Lending Institution: _____.

Sworn to and subscribed before me this_____day of _____,2005

Signature of Notary:_____

My Notary expires on:

*Re: Alleged Contracts: 000125-2200710 and 00039-2300022*

## AFFIDAVIT OF REVOCATION OF SIGNATURE FOR CAUSE

Comes now, *Ernest W. Sm.th*, hereafter referred to as "Affiant" and does so declare that:

1.  Affiant, having full, first had knowledge of the facts herein and, by making this affidavit of his (her) own first-hand knowledge, affirms that the facts stated herein are true, correct and complete to the best of his (her) knowledge and understanding.
2.  On or about (date you signed for the credit card) Affiant signed documents without knowledge that a fraud was being perpetuated upon Affiant.
3.  That Affiant was coerced into signing documents without any knowledge that a fraud was being perpetuated upon Affiant.
4.  That Affiant's revocation of signature constitutes a recission of signature. Thus, the contract no longer exists (the contract actually never existed *ab initio* - from the beginning).
5.  Affiant hereby revokes and makes void all signature(s) for cause as per UCC 3-501 and the Official Code of Georgia Annotated 11-3-501.
6.  Affiant is formally and timely removing the aforementioned signature(s) for all time and removing any nexus that (name of credit card co. or bank) may presume to have over Affiant by virtue of said signature(s).

*Ernest W. Sm.th*
*4455 Segedcersh Dr Kennesaw GA*
*Donna M. Smith GA 30152*

Date: *6/5/23*

Your (Affiant's) name and address

Your (Affiant's) Signature

*Trinity Akens*
Name of witness #1

Signature of Witness #1

*Ariel Rosschirt*
Name of witness #2

Signature of Witness #2

*Exhibit "C1"*

12

## AFFIDAVIT OF REVOCATION OF SIGNATURE FOR CAUSE

Comes now, *Donna M. Smith*, hereafter referred to as "Affiant" and does so declare that:

1. Affiant, having full, first had knowledge of the facts herein and, by making this affidavit of his (her) own first-hand knowledge, affirms that the facts stated herein are true, correct and complete to the best of his (her) knowledge and understanding.

2. On or about (date you signed for the credit card) Affiant signed documents without knowledge that a fraud was being perpetuated upon Affiant.

3. That Affiant was coerced into signing documents without any knowledge that a fraud was being perpetuated upon Affiant.

4. That Affiant's revocation of signature constitutes a recission of signature. Thus, the contract no longer exists (the contract actually never existed *ab initio* - from the beginning).

5. Affiant hereby revokes and makes void all signature(s) for cause as per UCC 3-501 and the Official Code of Georgia Annotated 11-3-501.

6. Affiant is formally and timely removing the aforementioned signature(s) for all time and removing any nexus that (name of credit card co. or bank) may presume to have over Affiant by virtue of said signature(s).

*Donna M. Smith*
*4455 Sagebrush Dr.*
*Kennesaw, GA 30152*
Your (Affiant's) name and address

Date: *June 5, 2023*

Your (Affiant's) Signature

*Trinity Atkins*
Name of witness #1

Signature of Witness #1

*Ariel Rosshirt*
Name of witness #2

Signature of Witness #2

*Exhibit "C2"*

12

Ernest W. Smith
Donna M. Smith
4455 Sagebrush Drive NW
Kennesaw, GA 30152
404-281-4763


Club Wyndham
Wyndham Vacation Ownership, Inc.
Wyndham Worldwide Corporation
Mailed to: Registered Agent: Corporation Servicing Company
1201 Hays St.
Tallahassee, Fl. 32301-2525

Date: August 12, 2023

Certified Return Receipt No. 7022 3330 0000 2690 6782

Re: Alleged Contract No's: 00125-2200710 and 00039-2300022;
    Club Wyndham Member Ownership No.: 00203680965

Attn.: Registered Agent and/or Wyndham Legal Department and to whom it may
concern:

We, Ernest W. Smith and Donna M. Smith, (hereafter, Undersigned) have been earnestly
and patiently attempting to correct the errors in your records regarding the afore-
referenced "contracts". Our first attempt to dispute these alleged "contracts" were
received by you on or about June 5, 2023. Despite proof that it was received by you on
that date, as we did not receive a response (written, or otherwise), we sent a second letter
with a copy of the first one which was also received by you on July 12, 2023. In the
interim, as you remained silent as to the original dispute, we sent you copies of our
revocation of signatures of which you received on June 9, 2023. See the Attachments.
You have continued throughout this entire dispute, to remain silent, and have thus,
acquiesced your right to dispute our claim that we do not owe anything as to the afore-
refenced "contracts". Furthermore, during one of the collection calls Undersigned,
Donna M. Smith, was told to email the dispute to "Owner Care". That was done, via two
emails to loanservicing@wyn.com on July 4, 2023.

As you should know, in law, "Silence Means Acceptance" (this has previously been
noted in the very first letter/dispute written to Wyndham)! Instead of responding in good
faith, however, Club Wyndham and Wyndham Vacation Ownership, Inc., etc. have taken
upon themselves to act in BAD FAITH by reporting missed payments to the credit
bureaus, to continue to show there is a debt owed to the credit reporting agencies and
have continued the weekly collection calls.

Exhibit
"D"

1

Because of your acts of BAD FAITH, the Undersigned are now put in the position of the necessity to file a legal claim against you as you are showing on the record that these "contracts" are still active and owed by us, and secondly, have had your employees calling repeatedly in an attempt to coerce the Undersigned into paying on an alleged debt we no longer owe, yet, YOU (the legal department) sit silently hiding in your office(s)!

We the Undersigned have the legal right to file against you in a court of law for:
1. Fraud
2. False presentation/representation of facts and circumstances
3. Coercion
4. RICO violations
5. Failure to fully disclose information regarding the "loans" and money
6. Unconscionable Contract
7. Any other actions which Undersigned may be lawfully able to file

WHEREFORE, this is a demand to <u>immediately</u> cease and desist from any further collections of the above referenced debt. This is also a demand for ALL monies already paid by us as to these alleged contracts which includes approx. $17,000.00+ of down payments plus the monthly payments charged to our credit cards from the outset (the total amount to be determined at the time of settlement). Additionally, Undersigned demands $1,500 in damages sustained by Undersigned for blatant and wilful disregard (wilful and negligent noncompliance) of State and Federal Laws regarding collection of debts and, especially, good faith and fair dealings and additional costs and fees associated with Undersignd's time and energy spent on this un-resolved dispute, thus far.

Furthermore, Undersigned demands that we be placed back in the <u>exact</u> same position we were with Club Wyndham/Wyndham Vacation Ownership, Inc. as PAID IN FULL "permanent" Gold Members prior to December 17, 2022 (which means a lower monthly maintenance fee).

Additional info as to this NOTICE OF INTENT TO SUE:

It is a well settled legal principle that all efforts to resolve a dispute must be exhausted prior to filing a lawsuit. **This notice is to serve that purpose**.

Club Wyndham and Wyndham Vacation Ownership Inc.'s wilful and negligent non-compliance reached diseased proportions a long time ago. They ought to be ashamed of themselves! This notice is to inform you that legal action is now immanent.

Due to the blatant and wilful violations the Undersigned will soon be beginning the process of filing complaints with the Better Business Bureau, the Federal Trade Commission and the Florida and Georgia State Attorney General's Office against you Wyndham.

Make no mistake, the Undersigned will have no problem filing suit in the U. S. District Court for Florida for Statutory, Compensatory and unspecified Punitive damages, in

demand of a jury trial, within twenty (20) days of receipt of this NOTICE OF INTENT TO SUE unless we receive notice that your company will cease and desist from all attempts to collect the alleged debt.  Wyndham is in violation of not only the Fair Debt Collection Practices Act but also The Fair Credit Reporting Act, Wilful and Negligent Noncompliance, as well as the FTC's Unfair Trade Practices Act.  The above claims against Club Wyndham and Wyndham Vacation Ownership, Inc. are not limited to those listed herein and others may be added as deemed necessary and right.
There IS cause for action on the Undersigned's part.

As you have seen, we have kept very thorough records.

GOVERN YOURSELF ACCORDINGLY,

Ernest W. Smith,


AND

Donna M. Smith


*This NOTICE is made with reservation of rights, waiving none, without prejudice, and is made under protest and necessity for preservation of Rights.*

Enclosures (5)

Cdcr-209802023 Smith, Donna & Ernest ************ Wyndha... imap://donnamarie_smith%40comcast%2Enet@imap.comcast.n...

Case 1:24-cv-00691-MLB-JEM Document 3 Filed 02/29/24 Page 47 of 52

**Subject:** Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham
Destinations **************
**From:** "Lacy, Savannah" <Savannah.Lacy@wyn.com>
**Date:** 8/25/2023, 2:50 PM
**To:** "donnamarie_smith@comcast.net" <donnamarie_smith@comcast.net>

Good afternoon,

Thank YOU for your recent letter to Stephen Holmes. He has designated me to be responsible for ensuring
that your matter is researched and resolved in a timely manner.

I am investigating this matter, and would like to speak with YOU personally regarding your concerns. I can be reached
by calling 1-800-446-1466, Ext: 499107 or via email at Savannah.Lacy@wyn.com. My office hours are Monday-Friday
from 8:00am-4:30pm EST.

In the event that I am not by my phone, please let me know a few times that YOU would be available and I would be
happy to contact YOU at time that is convenient for both our schedules. The case number associated
with your concern is CDCR-209802023.

I look forward to communicating with YOU in the near future to gain a better understanding of the
issues YOU identified and provide YOU with a resolution.

Regards,

**Savannah Lacy**
Executive Case Specialist
Owner Resolutions & Strategy

**Wyndham Destinations**
6277 Sea Harbor Drive
Orlando, FL 32819
Office: 1-800-446-1466, Ext: 499107
Fax: 1-407-626-6328
Savannah.Lacy@wyn.com



This email message (including all attachments) is for the sole use of the intended
recipient(s) and may contain confidential and/or privileged information, or may
otherwise be protected by work product or other legal rules. If you are not the intended
recipient, please contact the sender by reply email and destroy all copies of the original
message. Unless otherwise indicated in the body of this email, nothing in this
communication is intended to operate as an electronic signature and this transmission
cannot be used to form, document, or authenticate a contract. Wyndham Destinations,
Inc., and/or its affiliates may monitor all incoming and outgoing email
communications, including the content of emails and attachments, for security, legal

te: Cdcr-209802023 Smith, Donna & Ernest ************** Wynd... imap://donnamarie_smith%4ucomcast%2enet@imap.comcast.n...

Case 1:24-cv-00691-MLB-JEM   Document 3   Filed 02/29/24   Page 48 of 52

**Subject:** Re: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham Destinations ***************
**From:** Donna Smith <donnamarie_smith@comcast.net>
**Date:** 9/18/2023, 1:39 PM
**To:** "Lacy, Savannah" <Savannah.Lacy@wyn.com>


What happened to "resolving the problem in a timely manner"? Still waiting to hear back from you. If you think we need an attorney to help us sue Wyndham, you are gravely mistaken.

**Regards, Mr. and Mrs. Smith**

On 8/25/2023 2:50 PM, Lacy, Savannah wrote:

> Good afternoon,
>
> Thank you for your recent letter to Stephen Holmes. He has designated me to be responsible for ensuring that your matter is researched and resolved in a timely manner.
>
> I am investigating this matter, and would like to speak with you personally regarding your concerns. I can be reached by calling 1-800-446-1466, Ext: 499107 or via email at Savannah.Lacy@wyn.com. My office hours are Monday-Friday from 8:00am-4:30pm EST.
>
> In the event that I am not by my phone, please let me know a few times that you would be available and I would be happy to contact you at time that is convenient for both our schedules. The case number associated with your concern is CDCR-209802023.
>
> I look forward to communicating with you in the near future to gain a better understanding of the issues you identified and provide you with a resolution.
>
> Regards,
>
> 
>
> **Savannah Lacy**
> **Executive Case Specialist**
> **Owner Resolutions & Strategy**
>
> **Wyndham Destinations**
> 6277 Sea Harbor Drive
> Orlando, FL 32819
> Office: 1-800-446-1466, Ext: 499107
> Fax: 1-407-626-6328
> Savannah.Lacy@wyn.com
>
> This email message (including all attachments) is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information, or may otherwise be protected by work product or other legal rules. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Unless otherwise indicated in the body

**Subject:** Re: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham Destinations **************
**From:** Donna Smith <donnamarie_smith@comcast.net>
**Date:** 9/19/2023, 9:46 AM
**To:** "Lacy, Savannah" <Savannah.Lacy@wyn.com>

Good morning Ms. Lacy,

I appreciate the update. At least now we know you are allegedly working on our case. However, we have been locked out of our Club account for at least a month now. This, of course, prevents us from using the Gold level points we have already paid for in full. Thus email, is to put Wyndham on notice, that until our account is unlocked we will not longer be paying the monthly maintenance fees. We will not be paying for something we cannot use. Govern yourself accordingly. Mr. and Mrs. Smith

On 9/18/2023 3:21 PM, Lacy, Savannah wrote:

Good afternoon,

Please accept our sincerest apology for the length of time taken to complete our review of the concerns you have presented. While we regret that we have not yet determined a final resolution, I want to assure you that we are still in the process of reviewing the concerns outlined in your original communication. This includes a comprehensive review of your claims, the documentation that you have provided in writing, and the contract documents. While I am unable to provide a specific timeframe in which we will have concluded our review, I will provide you with periodic future updates until we have met with our executive leadership team to discuss your case at which time a final outcome will be determined.

While we are concluding our efforts, please let me know if there is any additional written documentation you would like to include with your case, and I would be happy to update your file to reflect any added material. Again, we appreciate your ongoing patience as we conclude our review.

Sincerely,

**Savannah Lacy**
**Executive Case Specialist**
**Owner Resolutions & Strategy**

**Wyndham Destinations**
6277 Sea Harbor Drive
Orlando, FL 32819
Office: 1-800-446-1466, Ext: 499107
Fax: 1-407-626-6328
Savannah.Lacy@wyn.com

Exhibit

" G "

**From:** Donna Smith <donnamarie_smith@comcast.net>
**Sent:** Monday, September 18, 2023 1:40 PM
**To:** Lacy, Savannah <Savannah.Lacy@wyn.com>
**Subject:** Re: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham Destinations **************

tE: Cdcr-209802023 Smith, Donna & Ernest ************** Wyn     imap://donnamarie.smith%40comcast%2Enet@imap.comcast.n...

Case 1:24-cv-00691-MLB-JEM   Document 3   Filed 02/29/24   Page 50 of 52

**Subject:** RE: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham
Destinations **************
**From:** "Lacy, Savannah" <Savannah.Lacy@wyn.com>
**Date:** 9/19/2023, 11:40 AM
**To:** donnamarie_smith <donnamarie_smith@comcast.net>

Good afternoon,

I am sorry to hear the difficulties you have experienced while attempting to access your online account. To ensure that any technical issues are resolved, would you please provide a detailed description of what errors you are experiencing, for example whether you are not able to get past the initial username/password entry, any error messages you receive?

Once I have this information, I can work with our IT department to troubleshoot any issues you are experiencing so you can access your online account.

Thank you,

**Savannah Lacy**
Executive Case Specialist
Owner Resolutions & Strategy

**Wyndham Destinations**
6277 Sea Harbor Drive
Orlando, FL 32819
Office: 1-800-446-1466, Ext: 499107
Fax: 1-407-626-6328
Savannah.Lacy@wyn.com


**From:** Donna Smith <donnamarie_smith@comcast.net>
**Sent:** Tuesday, September 19, 2023 9:47 AM
**To:** Lacy, Savannah <Savannah.Lacy@wyn.com>
**Subject:** Re: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham Destinations **************

**This e-mail is from an external source. Use caution when opening attachments or clicking on links.**

Good morning Ms. Lacy,

I appreciate the update.  At least now we know you are allegedly working on our case.  However, we have been locked out of our Club account for at least a month now.  This, of course, prevents us from using the Gold level points we have already paid for in full.  Thus email, is to put Wyndham on notice, that until our account is unlocked we will not longer be paying the monthly maintenance fees.  We will not be paying for something we cannot use.  Govern yourself accordingly.  Mr. and Mrs. Smith

On 9/18/2023 3:21 PM, Lacy, Savannah wrote:

    Good afternoon,

**Subject:** Re: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham
Destinations **************
**From:** Donna Smith <donnamarie_smith@comcast.net>
**Date:** 9/20/2023, 9:39 AM
**To:** "Lacy, Savannah" <Savannah.Lacy@wyn.com>

We are able to sign in and look at availability but when we go to book something it comes up saying:
"Then member number is unable to complete this transaction. Call 1-866-921-5144". I'm pretty sure
it has to do with this dispute and that we allegedly are behind on payments. Like we said, we will not
be paying for anything we cannot use (that we have, in good faith, paid for in full). Thus, the monthly
maintenance fee payments will stop until we can do so, again.

On 9/19/2023 11:40 AM, Lacy, Savannah wrote:

> Good afternoon,
>
> I am sorry to hear the difficulties you have experienced while attempting to access your online account. To ensure
> that any technical issues are resolved, would you please provide a detailed description of what errors you are
> experiencing, for example whether you are not able to get past the initial username/password entry, any error
> messages you receive?
>
> Once I have this information, I can work with our IT department to troubleshoot any issues you are experiencing so
> you can access your online account.
>
> Thank you,
>
> **Savannah Lacy**
> Executive Case Specialist
> Owner Resolutions & Strategy
>
> **Wyndham Destinations**
> 6277 Sea Harbor Drive
> Orlando, FL 32819
> Office: 1-800-446-1466, Ext: 499107
> Fax: 1-407-626-6328
> Savannah.Lacy@wyn.com
>
>
> **From:** Donna Smith <donnamarie_smith@comcast.net>
> **Sent:** Tuesday, September 19, 2023 9:47 AM
> **To:** Lacy, Savannah <Savannah.Lacy@wyn.com>
> **Subject:** Re: Cdcr-209802023 Smith, Donna & Ernest ************** Wyndham Destinations **************
>
> **This e-mail is from an external source. Use caution when opening attachments or clicking on links.**
>
> Good morning Ms. Lacy,

**Subject:** RE: Cdcr-209802023 Smith, Donna & Ernest
**From:** Donna Smith <donnamarie_smith@comcast.net>
**Date:** 9/26/2023, 12:40 PM
**To:** "Lacy, Savannah" <Savannah.Lacy@wyn.com>

To whom it may concern:

You have the audacity to send us a "Final Notice of Intent" when we have been attempting to resolve our dispute as to the last two alleged contracts since our first communication to you (by certified mail) as to this matter on or about May 27, 2023! You (i.e. Wyndham Vacation Club) think that you can simply ignore/stall discussing this with us face-to-face, all the while threatening collection of debts that have been discharged (see O.C.G.A 11-3-601(a) by YOUR own doing (you remained silent after given plenty of time to respond and refute our offer)!

It appears that you are deliberately, with *dolus malice*, trying to destroy our credit as well as steal over $161,000.00 that is PAID IN FULL by maliciously blocking us from using the points **we have already paid for.**

Wherefore, it seems you are looking forward to a lawsuit instead of acting in *good faith* to resolve this matter, and you have only 10 more days in which to do so, or we will be filing suit against you (as promised).


Govern yourself accordingly,

Mr. and Mrs. Smith

See attached

—Attachments:—

Wyndham Final Notice of Intent.tif                                          1.5 MB

